# Austin et al. v. Napier et al.

Nov. 17, 1942.

Goebel Goad for appellants.

W. D. Gilliam for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellants (plaintiffs below) brought this action in the Allen Circuit Court against appellees to have a certain deed executed by appellants to appellees declared to be a mortgage, and for a settlement and accounting for certain business transactions had between the parties.

Plaintiffs alleged in their petition that on January 18, 1936, they executed and delivered to defendant Whit Napier their note in the sum of $440 due on or before January 18, 1937, without interest, and to secure the note they executed and delivered to defendant a mortgage upon their land located in Allen County, Kentucky; that the amount of money borrowed by plaintiffs from defendant and actually paid to them at that time was $400 and that $40 was put in the note as interest, $16

of which was usury; that when the note became due they offered to pay it in full, stating to defendant that they would do so if he required it, but if not they would build a house on the land, and defendant told them that all he wanted at that time was his interest; that they built the house on the land and defendant then demanded payment of the note, which they were unable to do, and then defendant required them to execute to him a deed to the land and give to him a new note for $600, which they did with the understanding that when the indebtedness was paid defendant would reconvey the land to them; that notwithstanding the deed recited a consideration of $1,-000 cash in hand paid, it was not intended by the parties to be an absolute deed but plaintiffs were to have the right to redeem the land upon the payment of their debt and interest to the defendant; that the purported deed was executed by plaintiffs under duress after defendant had threatened to foreclose his mortgage lien and have the property sold; that after the deed was executed and delivered to defendant and on the same day plaintiffs and defendants entered into a contract whereby defendant agreed to give them one year to redeem the land during which time they paid to defendant $200; that they further paid the sum of $8.40 insurance premiums on two occasions, making $16.80, and a few days thereafter, in the spring of 1939, a barn on the property burned and defendant collected therefor the sum of $283 insurance, making a total payment of $499.80 on the original $440 note.

Plaintiffs further alleged that notwithstanding the amount that they had paid the defendant, he required them to execute a due bill in the sum of $700, due January 1, 1940, and when it became due they were unable to pay it and defendant then required them to execute another due bill for an additional sum of $100, or a total of $800 due to be paid January 1, 1941. They further alleged that they actually owed the defendant the original sum of $400 evidenced by the note of January 18, 1936, and the interest thereon at the legal rate of 6% per annum subject to the credits above set out; that the due bills and the purported deed were fraudulent and were executed and delivered under duress and under threat that defendant would take away from them their home or require same to be sold at a sacrifice. They asked that defendant be required to accept the actual amount due by them purged of all usury and that the due bills

be surrendered to them and that the purported deed re-- ferred to be cancelled and held for naught; or, if the court should decide that they are not entitled to have the deed cancelled, it then be construed to be only a mort- gage upon their land to secure the balance which they may owe defendant, if any.

Defendants filed their answer and counter-claim in which they admitted the execution of the note of $440 alleged in the petition, and the mortgage referred to to secure payment of the note, but denied that only $400 was borrowed or paid to defendant at the time or that any usury was embraced therein. They further denied that the deed was intended to be a mortgage but averred that same was executed and delivered to defendant for valuable considerations then paid, had and received by plaintiffs at the then fair market value of the land with- out any exception or reservation and with full knowl- edge of the contract of sale the plaintiffs executed and delivered the deed to defendant and defendant placed plaintiffs in possession of the land since which time they have been defendants' tenants at an annual cash rental of $100, and plaintiffs are still indebted to defendants for the sum of $100 for the rent for the year 1940. They further denied that there was any contract or under- standing between the parties that after plaintiffs paid their debt to defendant, the latter would reconvey the land to the plaintiffs or that plaintiffs had paid $100 or any other sum in pursuance of any contract for the right to redeem the land and denied that plaintiffs had made any payments set out in the petition on the said $440 note except that which they legally contracted to pay, or that they required plaintiffs to execute the due bills al- leged in the petition, or that plaintiffs ever executed to them any due bill as an obligation against the plaintiffs.

In paragraph two of defendants' answer they alleg- ed that for the years 1938, 1939 and 1940 plaintiffs have been tenants of the defendants on the land conveyed to defendants by the deed referred to above at a contract rental of $100 per year, all of which had been paid ex- cept for the year 1940, or $100, and asked that they re- cover that sum of plaintiffs on their counterclaim and further asked to recover of plaintiffs the amount of money plaintiffs received under the Soil Conservation Program which they were entitled to receive because of plaintiffs being their tenants.

By subsequent orders and pleadings the issue joined as indicated in the petition, answer and counter-claim, and the evidence taken by depositions and the case submitted, and upon the trial the chancellor dismissed plaintiffs' petition, subject to the provision that if plaintiffs shall on or before November 23, 1941, pay the defendants the sum of $900 with interest of 6% per annum from January 1, 1940, then in that event defendants shall execute and deliver to plaintiffs a deed of conveyance in fee simple to the lands which were conveyed by plaintiffs to defendants pursuant to the deed of March 1, 1937. Plaintiffs excepted to the judgment and prayed an appeal which was granted. A reversal of the judgment is urged upon the ground that it is not supported by the evidence.

The transactions had between plaintiffs and defendants over a period of years are numerous and complicated. It would serve no useful purpose to undertake to state the evidence in detail relating to these many transactions. It suffices to say that the plaintiff gave his version and explanation of these transactions and the connection they had with the subject matter of this litigation. His evidence and that of other witnesses who testified for him tends to support the allegations of the petition.

On the other hand, however, the evidence of defendant and other witnesses who testified for him is in sharp conflict with the evidence for plaintiff. Defendant testified that the deed executed by plaintiffs to him March 1, 1937, was intended to be an outright purchase and sale of the land, and that after he purchased the land he rented it to plaintiff at a cash rental of $100 per year and that plaintiff had paid him the rentals for the years 1938 and 1939 but still owed the rent for 1940. Defendant further testified that plaintiff offered to sell him the land and at first he declined to purchase it, stating that his investment secured by the mortgage suited him better than the purchase of the land, but plaintiff insisted on selling him the land and they finally agreed upon a consideration of $800. He said that the $1,000 consideration was recited in the deed at the suggestion of the defendant. He explained in detail how the $800 consideration was paid. He said that they adjusted the $440 note and interest on it for the part of the year which it ran after maturity, and he paid David Chandler a $45 debt for plaintiff which

was secured by a second mortgage on the land and paid the remainder in cash the day the deed was executed and delivered; that he had $150 of that amount in his pocket and went to the Farmer's National Bank of Scottsville and drew out an additional sum of $160 and paid it to plaintiff, thus completing the $800 agreed consideration. It is shown by the evidence of an employee of the bank that defendant's bank account was charged with $160 on the day the deed was executed. It is also shown that the note for $440 and the mortgage to secure it were in the hands of plaintiff at the time he filed the action, which documents plaintiffs filed as exhibits with the petition. Possession of these documents by plaintiffs tends to corroborate the statement of defendant that the note and mortgage had been satisfied. See Talley et al v. Eastland et al., 259 Ky. 241, 82 S. W. (2d) 368. In the course of defendant's testimony he stated that on one occasion after the deed was executed he did offer to reconvey the land to plaintiff for a consideration of $800 and the $100 rental which plaintiff still owed him. The chancellor assigns no reason in the judgment for the proviso that if plaintiff would pay defendant $900 then defendant should reconvey the land to plaintiff. We assume, however, that the chancellor was moved to make this proviso because of defendant's offer to reconvey the land, but since there is no cross-appeal we need not further discuss that point.

Defendant Elvis Austin places himself in an inconsistent position with reference to a certain $100 note involved in the transactions which he claimed was for the right of redemption of the property within one year after the deed was executed. The note filed as an exhibit shows that it was dated July 11, 1936, or more than seven months before the deed was executed. Evidently it could not have been for the purpose claimed by defendant. It is further shown that defendant had been twice convicted of a felony, the first conviction being in 1922 upon a charge of grand larceny for which he was sent to the penitentiary for three years, and the second one in 1925 for obtaining money under false pretense for which he was given another three years sentence.

It is a well established rule that a deed regular upon its face will not be adjudged a mortgage in the absence of clear and satisfactory proof that the instrument was intended to be a mortgage. Schuster v. Caldwell, 280 Ky. 802, 134 S. W. (2d) 624, and cases therein cited. In

view of the conflict in the testimony of the witnesses and the impeachment of defendant, which the chancellor had the right to take into consideration as to his credibility and the weight to be given to his evidence, we are persuaded that the evidence is sufficient to support the finding of the chancellor.

Judgment affirmed.